## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| PROJECT VERITAS and PROJECT VERITAS ACTION FUND, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES O'KEEFE; and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP, <br><br> Defendants. | **Case No. 9:25-mc-80617-RLR** <br><br> Originating Court: S.D.N.Y. <br> Originating Case No.: 7:23-cv-04533 <br><br> **AMENDED AND EXPEDITED MOTION SEEKING PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW** |

After issuance of a new, superseding subpoena in the above-referenced matter, Movant Benjamin B. Hinckley ("Movant") by and through undersigned counsel, hereby amends his Motion to Quash Non-Party Subpoena [ECF 1] to request a protective order pursuant to Federal Rule of Civil Procedure 26(c) preventing Defendants James O'Keefe and Transparency 1, LLC d/b/a O'Keefe Media Group ("Defendants") from conducting a audiovisual deposition and/or to restrict use of Movant's deposition testimony to presentation, if necessary, at trial. This motion is marked "expedited" pursuant to Local Rule 7.1(d)(2) because **Movant's deposition is scheduled for July 17, 2025**.

The grounds for this motion, further set forth in the incorporated memorandum of law, are as follows:

## BACKGROUND

1.  On May 20, 2025, Movant filed a Motion to Quash Non-Party Subpoena [ECF 1] with this Court.

2.  On June 23, 2025, after discussions between Movant's counsel and Defendants' counsel, Defendants issued a new subpoena addressing Movant's objections to Defendants' document requests. *See* Subpoena to Testify at a Deposition in a Civil Action, attached hereto as Ex. A.

3.  On June 25, 2025, Movant timely objected to the new subpoena on two grounds: (1) Defendants' continued nonpayment of a witness fee and estimated mileage; and (2) A video deposition—and, more specifically, Defendants' ongoing production of a "documentary" unfairly cutting and splicing deposition footage of other deponents in this matter—will subject Movant to annoyance, embarrassment, oppression, and undue burden. *See* Benjamin B. Hinckley's Objections to Defs.' Subpoena to Testify at a Deposition, attached hereto as Exhibit B.

4.  On June 25, 2025, in response to Movant's objections, Defendants agreed to pay Movant's witness fee and estimated mileage. However, Defendants refused to agree to a protective order addressing Movant's concerns with a video deposition. Second Decl. of David R. Osborne in Supp. of Mot. to Quash Non-Party Subpoena or for Entry of Protective Order ("Osborne Decl."), attached hereto as Exhibit C.

## GOOD CAUSE FOR PROTECTIVE ORDER

5.  Defendants' out-of-court conduct evidences an intent to use video depositions to annoy, embarrass, oppress, and unduly burden Movant. *See* Second Decl. of Benjamin B. Hinckley in Supp. of Mot. to Quash Non-Party Subpoena or for Entry of Protective Order ("Hinckley Decl."), attached hereto as Exhibit D.

6.  Specifically, Defendants have published selected portions of video depositions in the underlying litigation as part of an ongoing "documentary" about the underlying litigation. *See* https://okeefemediagroup.com/veritas (click "Launch Trailer").

7.  However, deposition testimony is often presented in a suggestive manner lacking context.

8.  For example, in a trailer advertising Defendants' ongoing documentary, a deponent, George Skakel, is shown answering an unknown question with "A lot of people thought there was malfeasance. I would prefer to stay ignorant of those events," followed by a jump cut to the deponent stating "I didn't want to know," in a zoomed-in shot so that the time stamp can no longer be seen. *Id.* at 0:04-0:11. Video then cuts to an unnamed interviewee stating, "Non-profit boards of directors can be very, very dangerous." *Id.* at 0:11-0:15. Defendants' selective use of video suggests that Skakel was referencing malfeasance by Plaintiff's board of directors, when the actual subject of his statements was unknown. Notably, Defendants are later shown confronting Skakel in person, at his home. *Id.* at 1:38-1:49.

9.  This footage of Skakel talking about malfeasance is intentionally misleading, misrepresenting his deposition testimony and the facts in the case. The footage in the trailer does not actually appear in the documentary's first episode,[1] but the documentary does contain footage from just minutes later (according to the time stamp), and the "malfeasance" he was asked about turned out to be a question about *Defendant O'Keefe's* alleged malfeasance—not malfeasance by the board of directors. At another point in the first episode, Skakel is again asked about "malfeasance," and this question too is about O'Keefe's alleged malfeasance, not malfeasance by the board of directors.

10. The trailer advertising Defendants' ongoing documentary ends with a shot of another deponent, Dan Strack, being asked, "How do you define 'conflict of interest?'" before video cuts entirely, not showing his answer. The brief, context-free scene—in which the deponent appears hesitant to answer—was clearly intended to suggest that Strack himself had a conflict of interest.

11. From all indications, Defendants perceive that Movant, like Skakel and Strack, is an enemy, and will likewise portray Movant in a false light.

12. It is exceedingly likely that Defendants' will use select video footage of Movant to make it appear that he lied or participated in a fraudulent ouster of Defendant

---

[1] The first episode of Defendants' ongoing documentary or relevant portions thereof may be made available to this Court in a hearing or may be submitted as an electronic exhibit pursuant to this Court's Local Rules. To the extent a motion is required to make such a submission, Movant so moves.

O'Keefe, with obvious harm to Movant's and Movant's family's safety, as well as Movant's personal and professional reputation. *See* Hinckley Decl. ¶¶ 3-12; *see also Happy Tax Franchising, LLC v. Hill*, No. 19-24539-CIV, 2021 WL 3811041, at *15-16 (S.D. Fla. June 7, 2021) ("[S]tatements regarding fraud and dishonestly are *per se* defamatory as they impute conduct/characteristics incompatible with the proper exercise of his lawful business, trade, profession, or office." (cleaned up)).

13. Defendants' broadcast of deceptive footage will generate publicity adverse to Movant and will itself intimidate, embarrass, and annoy Movant. It will also provoke Defendants' followers into intimidating, embarrassing, and annoying Movant. Hinckley Decl. ¶¶ 5-12.

14. Entering a protective order prohibiting an audiovisual deposition and forbidding disclosure of any materials or information learned during the deposition except for use at trial would protect Movant from annoyance, embarrassment, oppression, or undue burden or expense.

15. Good cause exists to enter a protective order under *In re Alexander Grant & Co. Litigation*, 820 F.2d 352 (11th Cir. 1987):[2]

---

[2] The Eleventh Circuit "has identified four factors for ascertaining the existence of good cause which include: '[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order.'" *In re Alexander Grant & Co.*, 820 F.2d at 356 (quoting *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir.1985)). "In addition, this circuit has superimposed a 'balancing of interests' approach to Rule 26(c)." *Id.*

a.  Defendants are seeking to video and make Movant's deposition public for an improper purpose: to generate publicity adverse to Movant, to intimidate, embarrass, and annoy Movant, and to provoke third parties to intimidate, embarrass, and annoy Movant.

b.  In addition, Defendants are using video deposition footage to sell a full-length documentary and raise money for Defendants' organization. Ex. E; https://secure.anedot.com/liberty-guard/lg-battle-for-light-ohf?utm_source=lg-battle-for-light&utm_medium=ohf&utm_campaign=mb&amount=25.

c.  Meanwhile, a less onerous alternative exists: Defendants can engage in discovery and secure information from Movant without video and without disclosing information learned from Movant to the general public.

d.  Stated differently, Defendants have a legitimate interest in trial preparation and defense. Preventing videotaped depositions and/or prohibiting any disclosure of Movant's information would not impinge on such an interest.

e.  The underlying litigation does not involve issues important to the public, but appears to involve a private dispute between Defendant O'Keefe and his former employer. Moreover, Defendants seek private information from or to Movant, a nonparty to the litigation.

16. Should this Court find it necessary, Movant hereby requests that he be permitted limited discovery and/or an evidentiary hearing in support of this motion for the purpose of demonstrating that Defendants intend to publish Movant's deposition and thereby annoy, embarrass, and oppress Movant.

## INCORPORATED MEMORANDUM OF LAW

This Court should issue a protective order pursuant to Rule 26(c) directing a deposition but prohibiting audiovisual recording and forbidding disclosure of any materials or information learned during the deposition except for use at trial. Doing so is necessary to protect Movant from annoyance, embarrassment, oppression, and undue burden.

Under Rule 26(c), this Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In determining good cause, the Court must balance the nonmoving party's interest in preparing for trial against the moving party's interest in confidentiality. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) ("[T]he district court's duty was to balance P & G's interest in obtaining the names and addresses of the study participants against the Center's interest in keeping that information confidential.").

Courts around the country routinely enter protective orders restricting the use or release of deposition video or transcripts. *See, e.g.*, *Felling v. Knight*, No. IP01-0571-C-T/G, 2001 WL 1782360, at *3 (S.D. Ind. Dec. 21, 2001)) "[T]his court finds that the

7

potential for abuse of the videotapes of the depositions is high and they should be covered by a continued protective order."); *see also Missouri v. Biden*, No. 3:22-CV-01213, 2022 WL 18143894, at *3 (W.D. La. Nov. 17, 2022) ("Accordingly, Federal Defendants' request to seal audiovisual recordings of depositions only for the purposes of pretrial discovery is GRANTED. However, once the audiovisual recordings of the depositions become public record, they will be unsealed as part of the 'judicial proceeding,' i.e., if they are introduced into evidence at trial or otherwise submitted in connection with some pretrial proceeding or motion.") *d'Amico Dry d.a.c. v. Nikka Fin., Inc.*, No. CV 18-0284-KD-MU, 2018 WL 5116094, at *4 (S.D. Ala. Oct. 19, 2018) ("[I]n order to ensure that Mr. Coronis' videotaped deposition will be utilized only in connection with this litigation—and to ease his privacy concerns—the undersigned ORDERS that the video recording component (as opposed to the transcript) of Mr. Coronis' deposition on October 24, 2018 is NOT to be publically disclosed or utilized in any other investigation or litigation."); *Leleux-Thubron v. Iberia Par. Gov't*, No. CV 6:13-0852, 2015 WL 13867131, at *4 (W.D. La. June 25, 2015) ("Romero has shown a more than adequate reason for issuance of the requested protective order—further public dissemination of the video-taped deposition by the litigants and their counsel will most certainly cause Romero undue embarrassment and humiliation, without any assurance of public benefit which cannot be accomplished by mere dissemination of the written transcript.").

To be clear, Rule of Civil Procedure 30(b)(3)(A) permits recording of deposition testimony "by audio, audiovisual, or stenographic means." However, "[i]t was not intended to be a vehicle for generating content for broadcast and other media." *Paisley Park Enters., Inc. v. Uptown Prods.*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999). Instead, courts have "a responsibility to exercise an informed discretion as to the release of [subpoenaed information], with a sensitive appreciation of the circumstances that led to their production. . . . Otherwise there would exist a danger that the court could become a partner in the use of the subpoenaed material 'to gratify private spite or promote public scandal,' with no corresponding assurance of public benefit." *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 603 (1978) (quoting *In re Caswell's Request*, 29 A. 259, 259 (R.I. 1893)).

Additionally, "videos can more easily be abused as they 'can be cut and spliced and used as 'soundbites' on the evening news or sports shows.'" *Stern v. Cosby*, 529 F.Supp.2d 417, 422 (S.D.N.Y. 2007) (quoting *Felling v. Knight*, 2001 WL 1782360, at *3 (S.D. Ind. Dec. 31, 2001)). This is especially the case when "it is readily apparent that the [nonmoving party] intend[s] to use any videotape for purposes entirely unrelated to the litigation as well as for the lawsuit itself." *Paisley Park*, 54 F. Supp.2d at 349. In recognition of this potential for abuse, some courts have imposed limitations on video depositions that continue to operate even after the lawsuit has concluded. *See, e.g., Larson v. Am. Fam. Mut. Inc. Co.*, No. CIV.A. 06CV01355PSFM, 2007 WL 622214, at *2 (D. Colo. Feb. 23, 2007) ("The Court's order on Defendant's Motion for a

Protective Order . . . is amended to prohibit the use of video depositions taken in this case for any purpose unrelated to this lawsuit, *including after the close of this lawsuit*, unless that portion of the video deposition is properly admitted into evidence at trial." (emphasis added)).

In *Burgess v. Town of Wallingford*, 2012 WL 4344194, at *8 (D. Conn. Sept. 21, 2012), for example, the district court granted a protective order precluding publication of deposition audio recordings. It reasoned that, "as numerous courts have observed, in this age of advanced technology, publication of audio recordings is rife for potential abuse." However, the court allowed the nonmoving party to keep transcripts of depositions on his website, in part because there was no evidence that the transcripts were likely to misrepresent the movant's deposition testimony. *Id.* at *12.

Likewise, in *Springs v. Ally Financial, Inc.*, 2014 WL 7778947 (W.D.N.C. Dec. 2, 2014), the district court issued a protective order requiring the nonmoving party to remove a video on YouTube with excerpts of a deposition, interspersed with critical comments suggesting that the witness was lying. *Id.* at *3. The order was subsequently affirmed by the Fourth Circuit, which held that "[t]he district court ha[d] a compelling interest in preventing litigants . . . from using discovery to mock and harass a private party on the internet." *See Springs v. Ally Financial Inc.*, 684 Fed.Appx. 336, 338 (4th Cir. Apr. 10, 2017).

Finally, federal courts have noted that there is a stronger basis for the issuance of a protective order if the nonmoving party may use discovery materials for private

10

commercial gain. In *Larson*, 2007 WL 622214, at *1, for instance, the district court issued a protective order preventing the nonmoving party from using deposition video of the moving party's employees in seminars, even after the lawsuit. The court saw "no reason to subject these individuals to this annoyance and undue burden in conjunction with this lawsuit for the commercial gain of Plaintiff's counsel after the conclusion of this lawsuit."

Here, Defendants are already using deposition videos to generate content for broadcast and other media. Most clearly, Defendants are promoting their own, paid-access documentary featuring deposition video footage of past deponents in this matter. Unfortunately, this footage has been cut and spliced so as to tell Defendants' story in a manner that has little relationship to what deponents have actually stated. Movant wants no part—and contends this Court should have no part—in assisting Defendants in their deceptive commercial enterprise.

Entering a protective order precluding Defendants from taking deposition video and/or using deposition footage for any other purpose than trial would protect Movant from annoyance and harassment of the sort he has already experienced at Defendants' hand. At the same time, doing so would not harm Defendants' interests in preparing themselves for trial in this matter: they can still depose Movant, ask relevant questions, and introduce any admissible evidence obtained from Movant at trial. Meanwhile, Defendants have not identified any particular need for video depositions apart from their "public" use.

11

WHEREFORE, Movant respectfully requests that this Court quash the subpoena attached hereto.

Respectfully submitted,

GOLDSTEIN LAW PARTNERS, LLC

Dated: July 4, 2025                    _s/ David R. Osborne_____
                                       **David R. Osborne**
                                       Florida Bar No. 70186
                                       Email: dosborne@goldsteinlp.com
                                       Goldstein Law Partners, LLC
                                       1200 Riverplace Blvd., Suite 105-1110
                                       Jacksonville, FL 32207
                                       Telephone: 610-949-0444
                                       Facsimile: 215-257-1910
                                       *Counsel for Movant*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that Movant's counsel has in good faith

conferred with Defendants in an effort to resolve the dispute addressed by this

motion without court action.


Dated: July 4, 2025                 *s/ David R. Osborne*
                                    **David R. Osborne**
                                    Florida Bar No. 70186
                                    Email: dosborne@goldsteinlp.com
                                    Goldstein Law Partners, LLC
                                    1200 Riverplace Blvd., Suite 105-1110
                                    Jacksonville, FL 32207
                                    Telephone: 610-949-0444
                                    Facsimile: 215-257-1910
                                    *Counsel for Movant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that that, on July 4, 2025, this motion was served

via electronic mail and will be served via certified mail on the following:

Nicholas P. Whitney
Seldon J. Childers
ChildersLaw, LLC
2135 NW 40th Terrace, Suite B
Gainesville, FL 32605
nwhitney@smartbizlaw.com
jchilders@smartbizlaw.com


Dated: July 4, 2025             *s/ David R. Osborne*
                                **David R. Osborne**
                                Florida Bar No. 70186
                                Email: dosborne@goldsteinlp.com
                                Goldstein Law Partners, LLC
                                1200 Riverplace Blvd., Suite 105-1110
                                Jacksonville, FL 32207
                                Telephone: 610-949-0444
                                Facsimile: 215-257-1910
                                *Counsel for Movant*

14